Argument not to exceed 15 minutes per side. Ms. Hampton, you may proceed. Good afternoon, Your Honor. May it please the Court, my name is Rachel Hampton and I represent the appellant Frank Clay in this matter. I've reserved three minutes for rebuttal. Mr. Clay respectfully asks this Court to reverse his sentence and remand for resentencing. This case turns on a simple principle. When the government seeks out enhancements that increase a defendant's sentence, the government must still do the minimal work to meet its burden and must rely on reliable evidence, not speculation layered on inference. The record shows the government still had more work to do to secure the enhancements against Mr. Clay. During my brief time today, I'd like to focus on three or four of Mr. Clay's arguments, but I would refer this Court to our brief for support on the other arguments. Those arguments are the Stolen Firearm Enhancement, the Firearm in Connection with Another Felony Enhancement, and the Reckless Endangerment Enhancement. I would like to start first with the argument that the District Court erred in applying the two-level Stolen Firearm Enhancement under USSG 2K2.1B4A, because I think that really paints a picture of what went wrong with Mr. Clay's sentence. The government submitted and the District Court applied that enhancement based on police reports that contained multiple layers of hearsay, including contradictory statements from the complainant, and those contradictions were serious. Let's start with the proposition that hearsay is fine in sentencing. Correct, Your Honor. So that can't be an error, because it was arguably hearsay. Well, Your Honor, this Court says the lower court can rely on police reports, even if there is hearsay, so long as it meets a minimal indiction of reliability. So what's wrong here? Even though this guy that owned the gun may have wanted to fudge on the circumstances of the gun being stolen, he never varies from the basic proposition that this gun was stolen. Is that right? That's correct, Your Honor. Explain why that isn't enough. Yeah, I mean, the well is poisoned from the start, right? We can't look at a piece of paper and decide this bucket of statements is true and this bucket of statements is false. And when we look at this Court's case law, such as cases like Black, which say we can rely on police reports when there's a minimal indication of reliability, but we really should have corroborating evidence. And so that's what should have happened here. They did. They went back and talked to him again. An ATF officer named Jeremy Marshall went back and talked to him. He changed his story a fourth time. So between the third story he said... Did he ever change his story about whether the gun was stolen? Your Honor, no. He was changing the statements about who he was with to such a degree that the investigating officer warned the claimant of the consequences of making a false report and to such a degree that the complainant himself noted that he was not entirely truthful with officers. So what we're asking here is that... I'm just trying to figure out why the fact that he was trying to prevent his wife from knowing he was fooling around with another woman when this gun disappeared. Why does that taint or render it unreasonable to rely upon the report? Your Honor, because the claimant has showed himself to be a liar. So we can't accept anything that's in the report absent independent corroboration. And that independent corroboration, Your Honor, we're not asking for the government to move mountains. It could have been simply calling the claimant. If that's too difficult, it could be calling the ATF agent who spoke to him or one of the police officers to ask these credibility determinations. You know, when you spoke to this person and they said this and this, did you believe them? That would have converted this into the trial court making a credibility determination. But otherwise, we can't look at a document that, you know, the investigating officer reports or notes that he was concerned about the claimant making a false statement and say we can carve out some statements and not others. I just don't think that's a workable rule for officers. What do you want the rule to be? I mean, my recollection when I was a district judge is that district courts rely on police reports all the time. Yes, Your Honor. So what is the rule here that would say it was unreasonable to rely upon this report? Your Honor, the rule here is that when the investigating officer states in the police report that, you know, to some degree he's concerned about the truthfulness of the report. So here, he was concerned. He noted that he warned the complainant of the consequences of making a false report. Then we look to corroborating evidence. And that's consistent with this court's case law. We have black, we have other, really all the cases cited by the parties where we say, you know, we don't blanket rely on police reports, but we often rely on them, as you mentioned, Your Honor. And we can only rely on them when there's a minimal indicia of reliability. And we also ask for corroborating evidence. Again, not a ton of corroborating evidence. It doesn't have to be, you know, calling every single person involved in this process. But it's just getting that credibility determination before the judge so that we're not relying on a report that has, you know, statements that are lacking. I'm still trying to figure out what we would say that constituted the lack of corroborating evidence here. You suggested, well, they should have called to the stand the guy that said his gun was stolen. That's one option. Is there any authority for that? Have we ever said that in a case? I think in black, Your Honor, this court, it didn't specify exactly which witness should have been called, but said witness testimony should have been brought before the court. So maybe the complainant, but maybe the investigating officer, one of the Grand Rapids police, one of the ATF officers who called him, just someone. What the government did here was they brought an ATF agent who had nothing to do with Mr. Clay's case. So we know what you say they didn't do. Do you have any indication? Is there anything you can point to that would suggest that had they done what you're saying they should have done, that the outcome would be any different? That at that point the district judge would say, oh, boy, I don't think this gun was stolen. You're a liar. I don't think the gun was stolen. Well, we don't know what we don't know, Your Honor, but it could be. So it's all speculation, basically. I mean, it's. That somehow had they done the things that they didn't do, it would help your case. Well, it would be. I understand where the burden is. I'm not trying to transfer the burden to you. I think it would help the case because it would sort of insulate the trial court's decision into more of a credibility determination, right? So even if they had called the ATF agent who called the claimant and said, you know, I spoke to him. I believed him. Then the district court can be satisfied. I have the minimal indiction of reliability here, and I have the corroborating evidence, and we can move on, right? But really the district court did what I'm asking you all to do today, which is look at the police report and see if you think it's enough and where a police officer notes. And that's what he did? Yeah. So what is the standard there? Is that an abuse of discretion? Your Honor, this is subject to a factual finding. It's clearly erroneous. There is some case law where this court says to the extent the argument sounds in due process, that is a legal determination reviewed de novo. I don't think this court has to decide that question. I think even under the lesser standard there is clear error here. Clear error is a pretty high standard to meet. So why was the error clear here? It seems to all come down to your concern that the police officer said that he warned the guy, don't lie. So that then creates this aura of a problem that triggers additional inquiry, including the requirement, as you put it, to call witnesses. Your Honor, just like this court's case in black, right? The question about minimal and just your reliability there was it was found because there were multiple layers of hearsay. But this court said simply in those instances, we need some cooperation. So I don't want to use all your time on the one issue. I think the endangerment issue is fairly interesting. So would you mind turning to that? Yes, Your Honor. So the guidelines specifically requires a substantial risk of serious injury. And the government seems to concede that there was no serious issue. But the guidelines still require substantial risk. So I want to level set here. We're not asking this court to determine was Mr. Clay's conduct appropriate, right? We're asking the government brought this enhancement. Did they prove it by preponderance of the evidence? And the government didn't meet that standard. They just have to show there's a substantial risk, right? Like if you didn't actually bite him, that could still create a substantial risk, correct? I mean, there's no case law on this issue of the bite in the circuit. But, yes, the test is substantial risk. And there's a lot of discussion about where the biting happened or whatnot. But if a defendant is trying to bite an officer, why isn't that creating a substantial risk of bodily injury to the officer? Your Honor, it's not just any risk. We're looking at a substantial risk, right? And so when you look at this court's case law, we're looking at very different circumstances, right? We're looking at situations like high-speed chases where a- Well, there are lots of, yeah, I mean, cases are decided on their facts. Yeah. But, you know, the officer was bending over. He was pretty vulnerable, right? He could have been bitten in the neck, in the head, in the hand. He could have been bitten in a lot of places. So why isn't, if a defendant is trying to bite an officer, why isn't that likely to create a substantial risk of harm? Your Honor, I'll say, I mean, I think the question you're asking is should we create a categorical rule that if someone bites them, this enhancement applies? And I think if you affirm here, you are creating a categorical rule. Oh, I mean, if you think biting is pretty dangerous conduct. I mean, you could be bitten in the neck, right? You could be bitten in the face. You have your fingers bitten off. Well, what this court says, Your Honor, is that we look at the factual circumstances, right? So we're, in order to assess- I understand the facts. The officer was kind of bent over, right? Like he was bent over with kind of, you know, right in front of the defendant. Your Honor- Sorry, go ahead. Oh, I'm sorry. So, I mean, there's really no contest that there's no serious bodily injury. He was handcuffed. Well, it doesn't have to be a bodily injury. We just agreed to that. Right, right. But there actually, I mean, you agree that there was an actual bite, right? Maybe there's some- There's some dispute in the record- About how many bites. Yeah, about how many bites. You agree there's at least one bite. We hear on the video the officer say he, you know- I have a question. Don't you agree there's at least one bite? Yes, Your Honor. That's clear in the video. I don't think there has to necessarily be any bite, but you agree there's at least one bite by the- Right, Your Honor. So, that proves that the officer was within range of being bitten by the defendant. Right, Your Honor. It's worse for you because the pre-sentence report says there was multiple bites. You didn't object to the pre-sentence report. The district judge adopts the pre-sentence report. Your Honor, my- You with me so far? Yeah. So, we're starting with the proposition there was at least one bite, probably multiple bites. Now, you devote- It seems to me you say there wasn't a risk of serious bodily injury because there wasn't serious bodily injury. You conflate the two. It's two separate questions. There was a serious bodily injury. The government is not saying there wasn't. There was a risk of serious bodily injury, and basically you only say, well, there isn't a risk that somebody gets bitten in the groin that that would cause serious bodily injury because it doesn't. I mean, that seems to be your argument. No, Your Honor. My argument is that we still have to look at the totality of the circumstances here to assess whether there was substantial risk. So, Mr. Clay was handcuffed. We didn't get any testimony from the officer. What's that got to do with whether he bit him? We're starting from the proposition that he was bitten. That's what the pre-sentence report says. Are you now disputing that? No, Your Honor, but it's not just any hypothetical risk in the world, right? We have to assess, is the risk substantial? So we do have to look at... So you're just basically saying a bite in the groin does not pose a substantial risk because it doesn't. So flesh that out for me. That's a bad way to put it. Sorry about that. I didn't mean that. Explain that in more detail. Why being bitten in the groin, even through clothing, does not pose a substantial risk? Of serious bodily injury. Right, of serious bodily injury, which is why that's sort of conceded by the government on that point. But, Your Honor, we're dealing, as you said, with a situation where it's a struggle on the ground. The officer is wearing clothes. Mr. Clay is handcuffed. The officer has his hand on his face. He's pushing him to the ground. There's not much he can really do there. And even the officer says, you know, I'm okay, I'm okay. So he bit him in the – or his hand was exposed, right? Correct. If he bit his finger off, is that a serious bodily injury? Your Honor, that there would be no dispute about. Why could he have not bitten his finger off? Why was there not a risk that he could have bitten his finger off? He bit him somewhere. His hand was very close to his face. This kind of goes back to what I was saying about just the government presenting some more evidence here. We have the video. We can see the alignment. You agree there was a bite. Correct, Your Honor. But, I mean, we can't see much. The video is so quick. You know, it's dark. We can't see it. Just, again, having some testimony from the officer as to what happened, even his fear, having some evidence of the medical records to really see the extent of the injury, we're kind of – Do you agree that the bite caused an injury based on this record, that it would be reasonable for the district court to conclude that, you know, it wasn't like a weak – I'm not sure. Like, yes, there's a risk that he could have bitten him anywhere. There's a risk he could have poked him in an eye. You know, you could go forever. But, like, looking at a risk of a bite to the groin, right, do you agree that the bite here was a strong enough bite that it caused an injury, even through close? Your Honor, we don't have any evidence of the extent of the injury. But you agree there was some injury that required medical treatment. So we know, yes, we know the officer went to receive medical treatment, but we don't know the extent of that medical treatment. There was blood, right? We know there was blood. We know there was blood on the thumb and, I guess, on the groin area, yeah, based on the PSR. So would there be a reasonable inference, then, that the bite was strong enough as to cause bleeding in the groin area? Your Honor, I think we don't know how the blood got there, if it was on his hand. We just need a little bit more here. And so looking at the evidence before this court, I think if the court affirms it would be creating a categorical rule that a bite, you know, creates a substantial risk of serious injury. And I don't think that's what this rule. Well, why would it need to be that bright? Couldn't you say a bright to a very sensitive area that draws blood or that is, you know, so strong as to cause an injury that requires medical attention? Your Honor, I think that rule still wouldn't work here because when we're talking about serious bodily injury, there's a certain definition of, you know, not just medical attention but medical intervention, right? So if we had the medical records to show that, but under your test, we can't even really say that the facts here meet that test because we don't have enough evidence and support. We have, you know, a blurry, fast-paced test. Right. I mean, for the definition of serious bodily injury to meet for, like, the medical care one, you need, like, surgery or things like that. But isn't one of the other prongs severe pain? That's correct, Your Honor. So we would have needed to hear from the officer just about that injury, right? On the video, he walks away. He says on the video that he bit me in the penis. And then he says, I'm good. I'm good. So because he says he's good, being bitten in the penis does not cause a substantial risk of serious bodily injury. So what, he had to bite him harder or he had to bite him deeper or longer? I'm just trying to figure out where the line is here. You want more testimony, but I'm trying to figure out what is the missing testimony. I think the testimony is about, you know, about the pain, about the fear, about... But that doesn't, that isn't risk. That's the result of whether there was a serious bodily injury. We're putting that aside to figure out whether what the guy did created a risk of serious bodily injury. So what would you have the officer say that goes to the risk component as opposed to the ultimate effect? Yeah, I mean, he had my whole thumb in his mouth and I had to yank it away quickly. You know, he was holding on to me for five seconds, right? Like duration, just something more. We see a cut on his hand in the video. We have the PSR statements and then we hear him say, I'm good. So on this record, it's hard to draw that line, but... But we have to draw a line. Right. If we write an opinion that agrees with you. Yes, Your Honor. I'm just trying to figure out where's the line. So my line, Your Honor, would be that on this record, the government had a little bit more work to do to show that there was a substantial risk of serious bodily injury. And again, it could have been short testimony by the officer or one of his colleagues saying these facts, right? Because then we would know the nature of this specific bite and how it applies with the rule. Otherwise, absent those facts... So some bites to the groin are bad and other bites to the groin don't engender this enhancement. Is that basically it? I mean, that's my position, Your Honor. And I think, again, if you're... It's your position. You're sticking with it, right? I'm sticking with it. And again, I think if you affirm it, you're creating a categorical rule. And it's just so hard to tell from the video and the brief... Why is that a bad categorical rule if somebody bites a police officer in the groin? I'm just lost by this. I would ask this court to look at its case law where this court does find substantial risk of serious bodily injury. And I know we can't go through the scope of every single example, but at least... Well, we are getting quite low on time, so unless you want to wrap up. Two points, Your Honor. The case is cited by the government. High-speed chases. We're dealing with someone driving 90 miles an hour, crashing through. We say that's a risk to officers and victims. That's understandable. Another one, someone draws a firearm, aims at officers. Now we have a standoff. That's what those cases look like, Jones and Brooks. And so I just don't think the situation rises to that level, and I think we need it a little bit more. Different kind. I'll give you that. Thank you, Your Honor. Thank you very much for your argument. The other side. Good afternoon, Your Honors. May it please the Court. John Shuttle on behalf of the United States Government. This court should reject Mr. Clay's attempts to argue that the district court's procedural reasonableness was had violated procedural reasonableness rules. The district court properly applied enhancements for possessing a firearm in connection with drug trafficking, possessing a stolen firearm, and recklessly creating a substantial risk of serious bodily injury. The district court also didn't plainly err, even if the issue were reviewable, in deciding to sentence Mr. Clay consecutively on his state parole cases. This court has, in many cases, recognized, and I'll start first with the stolen gun issue, because I think that was a big topic of conversation. This court has recognized that district courts can rely upon police reports. They just can't simply assume that they're automatically reliable and have to conduct some sort of individualized analysis. And I think the district court did that here. District courts generally have very wide latitude, as it's been talked about, to consider many things and a variety of things at sentencing. The district court took a look at the different reports and recognized that, as it's been discussed, the firearm owner was consistent throughout multiple interactions with law enforcement that the gun was stolen. And it's true that the facts there change, but I think it's also critical to point out that after being advised of the consequences of filing a false report, the firearm owner still stuck with the fact that the firearm was stolen. And I think the circumstances under which it was— Even if you're consistent about one point, is there at some point where your witness or your complainant lies so much that you shouldn't even credit the point that they're consistent about? That's, I think, a little bit of what I hear your friend arguing. No, I understand that, and I think to a certain point it would get to that. And perhaps if there were other surrounding circumstances that would cast doubt on the reliability of their statements, then it would also certainly push towards the level that it's unreasonable to rely on this kind of statements or information. But I would also point out that the circumstances under which he reported the firearm stolen are— especially in contrast with this court's recent decision in Black—are much different. He basically reported it stolen within hours of it actually being stolen, and he affirmatively reported it without any sort of involvement by law enforcement, without any sort of prompting or any obvious reason to lie. And I think it's a very helpful contrast to look at this case in comparison to Black, which I think is just a more extreme case in which it just went over the line. In Black, what had motivated the court's decision-making was two things. The first was the quadruple hearsay problem. And it was not only quadruple hearsay, but quadruple hearsay that went to the actual fact of whether the gun was stolen or not. It was the owner reporting that someone had told him that someone had told them that the gun had been stolen. So there's questions about whether it was stolen at all. But here we have, in contrast, a report in which it was consistent and unequivocal from the owner himself that it was stolen. And then the circumstances in Black under which it was stolen I think cast doubt on the reliability, as the court recognized, where the owner there waited years to ever report it. It was only reported stolen when officers confronted him and said, hey, we recovered this gun from a felon. Here we have an affirmative report relatively quickly, months before it was ever seized or retrieved. And ultimately, I think that goes towards the reliability. There's no obvious reason for why the owner could have lied in this case. He wasn't subject to criminal liability, be it like the owner in Black was, because a gun ended up in the hands of a felon. And ultimately, like I said, this is a kind of question where the district court has a wide latitude in terms of what it can consider. And I think it made a very considered judgment in this case, and I ask the court to affirm on that basis. Unless the court has any other questions, I would yield my time. Can I ask you? You don't even want to talk about the bite? Your Honor, I would be happy to talk about the bite. Yeah, I just was wondering if you might help elucidate what the distinction is between our sentencing enhancements that require bodily injury and those that require serious bodily injury, like the enhancement here. Yes. So as it's been talked about, the question here is one of risk, not necessarily what injury was actually sustained. Right, but it still has to be a risk of serious bodily injury. So I get that it didn't have to happen, right? So it could be a risk, but it still has to be a risk of serious bodily injury, which is distinct from some of our cases that talk about just bodily injury without the modifier. And that's what my question is for you. So the guidelines define serious bodily injury as an injury that involves extreme physical pain or protracted impairment of a function of a bodily member or organ, or an injury that requires medical intervention such as surgery in hospital or hospitalization or physical therapy, something to that effect. So you would agree that there are some physical actions that could be taken against an officer that, like in some situations, could be a substantial risk of serious bodily harm, but in other circumstances couldn't. So it's like you kicked someone, right? There's going to be some locations you kick, some force that you kick with that maybe does meet the standard, but maybe some that wouldn't cause a substantial risk of serious bodily injury. I think that's correct, Your Honor. And I would say, too, that because, and this Court recognized, I think, in its decision in MOOCs or MOOCs, that it's such an inherently fact-based question that it's something that, even though the ultimate question of how it applies to the guidelines is a mixed question of law and fact that's ruled on de novo, it's so fact-based that there's still significant deference that's accorded to the district court's finding. I mean, it's possible here to imagine facts in which it would appear less likely or maybe there would be a weaker case for applying the enhancement. Like let's say they had him, you know, let's say he was feet back from an officer and he was just making chomping sounds with his mouth. And like maybe that's, like how, maybe his intent was there, but how could he, did he actually create any substantial risk when he was, if he was completely, you know, restrained and wasn't moving his body and had been handcuffed and officers had control over him. But here we have a case in which it was still an active scene. They were actively trying to arrest him. There were serious reports of someone shooting a gun in the middle of the night, people getting guns pointed at them and being shot at, cars being shot at, and I think the officers were responding just generally to that risk more broadly and then to have an individual who is resisting officers, and then they see the gun and him trying to roll over on his body and attempt to reach the gun on top of biting the officer. I mean it's kind of one fact after another creates the substantial risk. But I agree with Your Honor that it's, I think it's a fact-based question. I can imagine cases, maybe more extreme cases, in which it would be hard to say that there's a substantial risk, but this case seems so much more clear based on the general facts plus the fact that he had bit the officer in the groin multiple times. I would also just make the point for Your Honors that it was unobjected to and it said in the PSR and the court was entitled to rely on the fact that there were multiple bites. I ultimately don't think it makes a difference in this case, but it speaks more to the degree of risk that had already been met. The only other thing I would point out to Your Honors that I wanted to address was this question about the reliability evidence going back to the stolen firearm and whether de novo review could be applied in this case to the extent it goes to the reliability evidence. And I think this court cleared up specifically in Santana and then in a published decision in Armstrong that clear error applies to these sort of reliability decisions. And in the abstract, the question of what process is required is a constitutional question that's reviewed de novo, but here we're applying this actual process for determining reliability and I think that's what the courts have recognized, that in this case, once the reliability standard is in place, due process is met and the question is whether there is that reliability which is itself reviewed for clear error. Okay, thank you. Let's go now. I have a brief rebuttal, Your Honor, specifically with regard to the stolen firearm. This case, what we're asking this court to do is to look at this court's decision in black and apply the rules that this court has applied over and over again, right? We normally do rely on police reports, but we need to look if there's a minimal indicia of reliability and if not, we need to look for cooperation. Now, the government tried to distinguish black based on the facts there, but really what the court was trying to do was decide whether or not that report met the minimal indicia of reliability and here we have arguably worse facts than black because we have the investigating officer dropping us hints that this claimant's story was not something he found to be believable. And so, again, under this court's precedent, we just ask the government take the small step of cooperating that and working to meet their burden and that did not occur here. Is there anything in the report that indicates that he rejected the story that he got from the gun owner as opposed to the fact that he warned him don't lie? I believe the language is I warn the claimant of the consequences of making a false report. But my narrower question is, is there anything in the report in the face of what you've just repeated that indicates that he rejected or even questioned the part of the report that his gun was stolen? No, Your Honor. We don't know specifically what the officer thought and that's the point, right? We don't know if the Grand Rapids police... But we know what he said and arguably what he didn't say. So I'm asking you, did he say anything in the report that we can see in black and white that indicated that he questioned whether the gun was stolen? Your Honor, all we have is that sentence that I mentioned to you that I warn the complainant of the consequences of making a false report. And so, I mean, we can all read that different ways and I think that's the point here. We didn't have that small independent collaboration. We don't know what the underlying investigating officer thought. There was actually, I think, three officers who spoke to the claimant. And just to hear from them, did you think this person was truthful? So if he doesn't say that he questioned whether the gun was actually stolen, then explain again, and maybe I'm asking you to repeat what you've already said, where's the clear error here? Your Honor, the clear error is because this court requires minimal indicia of reliability in police reports before using them to sentence someone. And that was not met when the underlying officer indicated concern about the complainant's report. We can't divide out which part's true and which part's false. And we needed some small cooperation here. Thank you. Thank you. Thank you for taking the case. Thanks to the counsel. The case will be submitted.